UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JENNIFER S. SMITH**,                              Case Number 3:14 CV 1342

    Plaintiff,                              Judge Jeffrey J. Helmick

    v.                                      REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                              Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Jennifer Smith filed a Complaint against Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. 1385(c). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated March 21, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

On June 23, 2008, Plaintiff protectively filed for SSI benefits alleging disability since February 1, 2004. (Tr. 306-15). Plaintiff's claims were denied initially (Tr. 130-35) and on reconsideration (Tr. 140-52). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 153-54). On June 6, 2010, Plaintiff (through counsel) and a vocational expert ("VE") testified at a hearing after which the ALJ found Plaintiff not disabled. (Tr. 34-60; 107-24). On May 15, 2010, the Appeals Council remanded the case to the ALJ. (Tr. 125-29). On November 29, 2012, Plaintiff (through counsel) and a VE testified at a hearing before a different

ALJ, after which Plaintiff was found not disabled. (Tr. 9-33; 61-102). On April 19, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); 20 C.F.R. §§ 416.1455, 416.1481. On June 20, 2014, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

*Personal and Vocational Background*

Plaintiff was 28 years old at the time of the second hearing before an ALJ and had a Bachelor's Degree in liberal studies. (Tr. 70-71). She lived with a roommate and had no relevant past work experience. (Tr. 25, 71). Plaintiff had a driver's license and was able to drive, she also cooked, read books, and used a computer. (Tr. 79-80). However, she testified that she typically had three bad days per week where she could not even bathe herself due to severe depression, paranoia, and hallucinations. (Tr. 81).

*Medical Evidence*

Plaintiff began treatment with Catherine Holladay, D.O., in March 2004. (Tr. 509). On mental status exam, Dr. Holladay observed Plaintiff had normal speech, no paranoia or delusions, good memory and cognition, and was cooperative with good eye contact. (Tr. 522). Plaintiff suffered from eating disorder symptoms, irritability, and mood swings. (Tr. 522). Dr. Holladay assigned a global assessment of functioning ("GAF") score of 55[1]. Plaintiff's symptoms improved until early 2006, when she began to have auditory and visual hallucinations that continued despite an increase in anti-psychotic medication. (Tr. 509).

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.* at 34.

In 2008, Plaintiff was treated by Laurie Polumbinsky, MD, who diagnosed her with major depressive disorder and bipolar personality disorder. (Tr. 530-40). In early June 2008, Plaintiff tried to work at Wal-Mart but was very stressed and had panic attacks at work. (Tr. 531). Plaintiff soon switched jobs and began working in the laundry room of the Days Inn where she did better. (Tr. 530).

In July 2009, Plaintiff sought treatment at Firelands Counseling and Recovery Services. (Tr. 615). At that time, she reported auditory and visual hallucinations and had anxiety problems when others did not follow her "mental rules". (Tr. 615). She was diagnosed with schizophrenia, paranoid type, and obsessive compulsive disorder ("OCD") and assigned a GAF score of 40[2]. From September 2009 until March 2010, Plaintiff continued to receive treatment at Firelands and continued to struggle with hallucinations, OCD symptoms, and anxiety symptoms. (Tr. 598-610).

On mental status exam in June 2009, with Carlos Lowell, D.O., Plaintiff's mental status was "significantly improved" since she started treating with him except she thought she was more anxious. (Tr. 704). Otherwise, she had appropriate affect, intact thought processes, and denied suicidal ideation. (Tr. 704). Dr. Lowell discussed adding another medication, but Plaintiff preferred not to do so at that time, and Dr. Lowell noted Plaintiff was already on essentially the maximum dosage of all her other medications.

Plaintiff was hospitalized in July 2010 when her hallucinations became severe. (Tr. 634). She reported that for the past three weeks her hallucinations had been pretty bad and she was seeing people walk through walls, blue aliens, and demon faces, as well as overhearing muffled voices from a big party. (Tr. 634). On mental status exam, she had normal motor activity, clear

---

2. *See DSM-IV-TR*, *supra*, note 1. A GAF score of 31-40 reflects some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depress man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.

speech, a somewhat depressed, stressed, and anxious mood, and a somewhat flat but pleasant affect. (Tr. 636). Her thought content was positive for hallucinations but negative for suicidal or homicidal ideation. (Tr. 635-36). At discharge, Plaintiff said she was "doing better" and wanted to get out of the hospital. (Tr. 631). She was instructed to remain sober, follow-up with outpatient counseling and psychiatric care, and assigned a GAF score of $45^3$. (Tr. 632). Plaintiff was hospitalized again in July 2010 after suffering from worsening psychotic symptoms with command auditory hallucinations to harm herself. (Tr. 618-22).

Plaintiff required hospitalization again in November 2010 but upon discharge had improved mood, sleep, and thought processes and a marked decrease in hallucinations. (Tr. 693-95). On mental status exam at her follow-up, Plaintiff had good appearance and hygiene, normal speech, and a good mood with "improved ego boundaries" in her thought content. (Tr. 693). Plaintiff's mood remained good through early 2011. (Tr. 688-92). However, in March of 2011, Plaintiff was seen in the emergency room after intentionally burning herself with a lighter. (Tr. 712-14).

Plaintiff continued counseling at Firelands throughout 2011 and 2012, where she had a good mood and remained stable but did report experiencing some hallucinations as well as symptoms of anxiety and depression at times. (Tr. 659-704).

Medical Source Opinions

Dr. Holladay submitted an undated opinion which deferred to Plaintiff's "current psychiatrist" for an assessment of Plaintiff's mental status. (Tr. 541). Dr. Holladay indicated Plaintiff had tried several jobs and had limited ability to tolerate work stress. (Tr. 541). She said Plaintiff suffered from a lack of confidence and self-esteem due to her symptoms and had

---

3. *See DSM-IV-TR*, *supra*, note 1. A GAF score of 41-51 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34.

unpredictable mood swings. (Tr. 541). She said Plaintiff was compliant with her medications when she saw her. (Tr. 542).

In August 2008, state reviewing psychologist Tasneem Khan, E.D., reviewed Plaintiff's records and opined that although she did have moderate limitations in her ability to complete a normal work week without psychologically based symptoms, interact with the general public, accept instruction and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting—she was otherwise not significantly limited in any work related area. (Tr. 543-45). Dr. Khan further indicated Plaintiff's symptoms had improved with medication and treatment and assigned a GAF score of 75[4]. (Tr. 545). He indicated Plaintiff would likely perform best in a setting with minimal interaction and where duties and routines are predictable. (Tr. 545). State agency reviewing physician Frank Orosz, Ph.D., affirmed this assessment in December 2008. (Tr. 566).

Plaintiff was consultatively examined by Thomas Evans, M.D., in July 2012. (Tr. 645). On mental status exam, Plaintiff had good hygiene and grooming, normal speech, maintained good eye contact, and had no loosening of associations or tangential speech. (Tr. 647). She described her mood as depressed and anxious but her observed mood was euthymic and her affect was consistent with her mood. (Tr. 648). Plaintiff was oriented, had adequate judgment and insight, average IQ, and did not display any evidence of psychosis despite describing psychotic symptoms. (Tr. 648). Dr. Evans diagnosed bipolar disorder and generalized anxiety disorder and assigned a GAF score of 55[5]. (Tr. 649).

---

4. *See DSM-IV-TR*, *supra*, note 1. A GAF score of 71 to 80 indicates symptoms that, if present, are transient and expected reactions to social stressors (e.g., difficulty concentrating after a family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in school work). *Id.* at 34.
5. *See DSM-IV-TR*, *supra*, note 1.

Dr. Evans opined that Plaintiff's IQ indicated she would not have difficulty understanding and carrying out moderately complex instructions in a workplace setting. (Tr. 650). Plaintiff maintained attention and concentration throughout the evaluation and reported that she was able to get along with supervisors and coworkers and take direction from authority. (Tr. 650). However, he indicated that her anxiety was currently an impediment to working. (Tr. 650).

He said there was no evidence Plaintiff was trying to fabricate her symptoms and that her anxiety was an impediment to her working as she has had incidents of blacking out at work. (Tr. 649-50).

Dr. Lowell completed a medical source statement in November 2012. (Tr. 719). He opined that Plaintiff's symptoms would interfere with her attention and concentration needed to perform even simple tasks during 15-33% of the workday, and that Plaintiff would be absent from work two to three days a month. (Tr. 719).

*ALJ's Decision*

On December 21, 2012, the ALJ found Plaintiff had the severe impairments of bipolar disorder, generalized anxiety disorder, obesity, and borderline personality disorder, but that these impairments did not meet or equal a listing. (Tr. 15-16). The ALJ then found Plaintiff had the RFC to perform a full range of work at all exertional levels with the additional non-exertional limitations that she could not climb ladders, ropes, or scaffolds or be exposed to unprotected heights; was limited to no more than occasional workplace changes including changes to routine tasks; no interaction with the public; no tandem tasks; no more than occasional supervision and no more than occasional interaction with coworkers; less than constant (meaning "frequent") stooping and crouching; and no more than occasional kneeling, crawling, and bending over to reach something on the ground level. (Tr. 18).

6

Next, the ALJ found, based on VE testimony that Plaintiff could perform work as a dish washer, janitor, and detailer. (Tr. 27). Therefore, she was not disabled.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

7

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred (1) in failing to provide good reasons for assigning little weight to the opinion of Plaintiff's treating psychologist Dr. Lowell; (2) in her analysis of the opinions of non-treating sources; and (3) in her analysis of Plaintiff's obesity particularly when considering her subjective complaints. (Doc. 15). Each of these issues will be addressed in turn.

### *The Treating Physician Rule*

Plaintiff argues the ALJ erred in failing to provide good reasons for assigning little weight to her treating psychologist Dr. Lowell's opinion.

8

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the ALJ assigned little weight to Dr. Lowell's opinion that Plaintiff's symptoms "were severe enough to interfere with her attention and concentration between 15 to 33 percent of the workday and estimated that she would be absent from a full-time job about 2-3 days a month" for the "same reasons Dr. Holladay's opinion was not given greater weight" namely, because his opinion was not supported by his own clinical findings. (Tr. 24). In her discussion of Dr. Lowell's records, the ALJ cast doubt on Plaintiff's alleged concentration difficulties because

9

during clinical observations, Plaintiff exhibited no memory deficits, no evidence of psychotic features, had a pleasant and cooperative mood, and otherwise showed an increase in coping skills. (Tr. 21, 598-610). Thus, the ALJ rejected Dr. Lowell's opinion because it was not supported by objective findings.

Plaintiff argues this is insufficient because the ALJ is obligated to consider all of factors in 20 C.F.R. § 404.1527(d)(2) and the ALJ does not discuss anything other than the fact that his opinion was not supported by objective findings. (Doc. 15, at 19). However, contrary to Plaintiff's contention, the Sixth Circuit does not require that the ALJ specifically articulate his findings as to each of the factors in 20 C.F.R. § 404.1527(d)(2), rather, the requirement is that he specifically articulate the reasons for the weight given. *Rogers*, 486 F.3d at 242. The fact that objective findings did not support Dr. Lowell's opinion was sufficient to support assigning it less weight; therefore, the Court should affirm the ALJ's assessment of Dr. Lowell's opinion.

*Non-Treating Sources*

Plaintiff argues, conversely, that the ALJ erred in assigning "great weight" to Dr. Evans, the consultative examiner's opinion and "some weight" to the state agency physicians. (Doc. 15, 21-24).

Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. 20 C.F.R. §§ 404.1502, 416.927. This includes a consultative examiner. *Id.* When determining what weight to give examining sources the same factors that are considered for treating physicians must be considered including the supportability of the opinion and the consistency of the opinion with the record as a whole. *Id.*

Last in the medical source hierarchy are non-examining sources. These are physicians,

10

psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. §§ 404.1502, 416.927. This includes state agency physicians and psychologists. *Id.* The ALJ "must consider findings and other opinions of [s]tate agency medical and psychological consultants . . . as opinion evidence", except for the ultimate determination about whether the individual is disabled. 20 C.F.R. § 404.1527(e)(2)(ii).

Dr. Evans

Plaintiff argues the ALJ erred in assigning "great weight" to Dr. Evans' opinion because, as the Social Security Administration acknowledge in Listing §12.00(C)(3), Appendix 1 to Subpart P, Part 404, one-time evaluations have limited value in mental health. (Doc. 15, at 21-22).

While Plaintiff is correct that, in mental health cases, the ALJ must look at a claimant's ability to function on a sustained basis, not what he can do occasionally, Plaintiff's claim still fails because the ALJ's decision to give great weight to a portion of Dr. Evan's opinion is supported by the record. As the ALJ indicates, Plaintiff's mental status exams did not support her difficulty concentrating and she did not have psychotic symptoms that were observable to physicians on examination. (Tr. 598-610; 635-36; 704). The ALJ assigned great weight to Dr. Evans' functional assessment that Plaintiff could maintain concentration and attention, understand, remember, and carry out simple instructions, and respond appropriately to co-workers and supervision because it was consistently supported by her mental status exams. (Tr. 24, 649-50). Thus, substantial evidence supports the ALJ's assignment of weight to Dr. Evans' opinion.

State Agency Physicians

Plaintiff also argues the ALJ's reliance on the reviewing state agency physicians is misplaced. (Doc. 15, at 22).The ALJ found that the state agency physicians, although they were non-examining and "therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those physicians do deserve some weight, particularly in case like this where there are a number of other reasons to reach similar conclusions (as explained throughout this decision)." (Tr. 25).

It is clear from the surrounding discussion of the other medical opinions that the ALJ is a assigning more weight to these physicians' opinions because they opined that Plaintiff did not have significant limitations in her ability to complete a normal workweek without psychologically based symptoms, interact with the general public, accept instruction and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (Tr. 25, 543-45). Therefore, the ALJ properly assessed the non-examining physicians' opinion and assigned them some weight as they were consistent with objective medical evidence.

*Obesity*

Plaintiff argues the ALJ failed to properly consider the effects of her obesity on her symptoms, particularly that the ALJ did not consider whether her obesity supported her subjective complaints. (Doc. 15, at 24).

Social Security Ruling (SSR) 02-1p, 2000 WL 628049, explains the Social Security Administration's policy on the evaluation of obesity, but "does not mandate a particular mode of analysis." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Nevertheless, SSR 02-1p has been interpreted, at a minimum, to require the ALJ to consider the claimant's obesity during the decision making process. *Id.* at 411-12.

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility, an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;
>
> (vi) Any measures [the claimant] ha[s] used to relieve pain or other symptoms; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the

ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

Review of the ALJ's decision demonstrates the ALJ considered Plaintiff's obesity throughout her analysis. First, at step-two, the ALJ found obesity was one of Plaintiff's severe impairments. (Tr. 15). Next, because Plaintiff's obesity met the severity level of the 1.00 musculoskeletal and 4.00 cardiovascular listings, the ALJ considered and determined that Plaintiff did not meet any of those impairments. (Tr. 16). In determining that Plaintiff could perform work at all exertion levels, the ALJ "considered what affect her obesity has…obesity can cause or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems and must be considered to determine if it alone or in combination with other impairments significantly limits an individual's physical or mental ability to do basic work activities." (Tr. 23). Plaintiff "testified that her weight cause[d] her muscles to hurt [shortness] of breath and …problems bending because of her belly." (Tr. 23). Thus, the ALJ assessed Plaintiff's RFC and accounted for limitations, including postural limitations resulting from her obesity.

The ALJ then limited Plaintiff to work that did not involve exposure to unprotected heights and involved less than constant stooping and crouching; and no more than occasional kneeling, crawling, and bending over to reach something on the ground level. (Tr. 18). Thus, the ALJ properly considered Plaintiff's obesity under SSR 02-1p.

Moreover, the ALJ properly assessed Plaintiff's credibility, finding that objective medical findings as well as Plaintiff's daily activities which included cooking, simple chores, and going out on her own indicated that her symptoms were not as severe as she alleged. (Tr. 22-23, 79-80). The ALJ was not required to discuss every one of Plaintiff's claims and was entitled to assess Plaintiff's credibility as she saw fit as Plaintiff's obesity did not create a requirement that specific reasons be given for an ALJ's decision to discredit Plaintiff's claims, the requirement is only that they be considered.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                                    s/James R. Knepp II
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).